Good morning, Your Honor. May it please the court, Alyssa Bell on behalf of Appellant Vivian Tat, I would like to endeavor at least to reserve two minutes for rebuttal, and I would like to begin my argument by addressing the District Court's reliance on an impermissible factor before turning to the Guidelines issue and the Rule 32 issue in this case. Your Honors, the factor that sent Ms. Tat to prison is nowhere to be found in Section 3553A. The parsimony principle requires that the District Court make an individualized determination of the punishment that each person who comes before it for sentencing makes in light of the unique mitigating circumstances of their lives, in light of their offense characteristics, and in light of the balance of the 3553 factors. And that did not happen here. Instead, the court relied on cost, which is an impermissible factor. And the court was quite explicit about this. In rejecting the terms of supervise release that Ms. Tat proposed in order to achieve, quote, maximum societal benefits, as the court requested, the court stated trying to manage this unwieldy thing that's also going to be expensive. Counsel, I understand that argument, but what I actually want you to address is the fact that the judge really never resolved, at least I can't find in the record where the judge resolved Dr. Wong's letter. Did the judge ever really address that, discredited it, or say anything with regards to the letter? No, Your Honor. The court did not resolve that objection. And isn't that, just on that alone, isn't that a basis, a reversible error? Yes, absolutely, Your Honor. The other question I have goes to the issue of leader, in this particular case, leader-organizer. What in our case law is there to indicate that this case is consistent with the application of leader-organizer? Because the cases that I have found involve very extensive criminal activity and just dozens of victims. The amount of money is in the, certainly thousands upon thousands, millions in many cases. So I guess I'm trying to find the cases that they're indicating where that would apply. Well, Your Honor, the government has cited none. I think the government's argument on this point, quite frankly, amounts to a concession. Your Honor is quite right that under this court's precedent there has to be some combination of many unwitting participants, large sums of money, interstate travel, multiple victims. This case involves none. It took place over the course of half an hour on a single day at a single branch office in a Los Angeles suburb. It involved just four unwitting participants. The sum was modest. There was one victim. There was nothing extensive about it, either according to this court's precedent or according to the plain terms of what that statutory term means and should mean. And to your first point, but as it relates to this issue, did the judge indicate whether he concluded that this was an isolated incident versus a pattern or practice under the 3553 factor? Did he indicate as much? Well, so I think Your Honor's question there really goes to the second of the Rule 32 errors, which is whether the court made a finding that this was an isolated incident in an otherwise law-abiding life or whether instead Ms. Tatt was a repeat offender who had merely only once gotten caught. And the court never resolved that issue whatsoever. I would be happy to address my arguments wherever the court would find it most helpful. On the issue of resolving, you know, resolving disputes, my understanding of the Rule is that it relates to objections to the PSR. Are these issues that you're claiming were not resolved objections to the PSR, or were they other factual issues that were kind of separate? They were objections to the PSR, Your Honor. The government submitted untimely objections to the PSR that related to two factual issues, and defense counsel recognized them as such. He invoked Rule 32 and explained that those objections were untimely and could and should be rejected for that reason alone. But in the alternative, he asked for a specific factual finding on those two disputed issues. One, whether Dr. Wong's letter was, quote, unverified because she had insufficient qualifications in order to render the opinion that she had about Ms. Tatt's mental health and what the real and serious consequences would be to her if she were incarcerated. And the second factual finding that was requested was on this precise issue of whether she was a repeat offender or instead whether this was an isolated incident in a long career of faithful service. And the district court did not resolve either issue, although the matter was squarely brought to the court's attention for resolution and Rule 32 was invoked specifically. Your Honors, I think that there are multiple separate and independent bases to reverse and remand in this case. I think there is really no question that the leader organizer enhancement did not apply. I think there also is no question that the district court failed to make sufficient findings under Rule 32. It is an exacting standard and the made no effort to comply with it. I am tempted, if there are no further questions, to reserve the balance of my time for rebuttal to address whatever the government may raise. Thank you. Thank you, counsel. We'll hear next from Mr. Alden. Good morning, Your Honors. May it please the court. Bram Alden for the United States. I did want to start with the Rule 32 objections just because there were questions about that and I disagree with counsel as to whether those were actually objections to the PSR. They were not. The defense pointed out below that the government could not have even filed those objections to the PSR because it was beyond the time limit for which any such objections were permissible. That's a short time window. Were they not filed? It was not an objection to the PSR. What the government did file was a supplemental sentencing position that can be filed after objections to the PSR did. Hold on. You prepared a position that you filed with the court and you're saying that is not an objection? It was not an objection to any factual statements in the PSR. You criticized in that filing, Dr. Wong's letter, did you not? In fact, I think I forget the specific language, but it was self-serving, I think. I think there were references to that. So that was not an objection to that? It was absolutely a disagreement with the defense's characterization of the facts. It was a disagreement with Dr. Wong's letter. It was absolutely an objection to things that the defendant was arguing. However, Rule 32 only applies to objections to factual findings in the PSR. Was the content of that letter relevant to the termination as a factor in a 3553 analysis? Yes, I think it was, but it wasn't relevant. If it was a relevant factor, why then didn't the judge resolve that issue if there's clearly a disagreement in the parties? And that's not required under Rule 32. What is required is resolving disputes about factual objections to the PSR. And that's clearly established by this court's decisions in both Petrie and Christensen. And Petrie addressed exactly what is necessary under Rule 32, which is resolving objections or disputes about factual findings in the PSR. The PSR did not make any factual findings about Dr. Wong's letter, nor did it make any factual findings about the defendant's mental health or any or either of the other things that the defendant has suggested were objections here. So Rule 32 did not require the district court to resolve a dispute about Dr. Wong's letter. Did the PSR say anything about Dr. Wong's letter one way or the other? I don't believe so, Your Honor. And I do think what the district court said ultimately was to the extent that this defendant had mental health problems at this stage of the proceedings, which was years after the crime, years after the indictment, and years after the trial, that most of what her mental angst or concerns were about were that she had a case hanging over her head for many years where she had not been incarcerated because she was on bail. Pending the first appeal in this case and pending the resentencing proceedings. So the district court did address what her mental health concerns might be. Granted, Your Honor, it did not, Judge Mendoza, say, I disagree with Dr. Wong, and I don't think that the law requires that under Petrie. Could you address the leader organizer enhancement? Because, again, and I'll ask you the same question. I tried hard to look for cases that were similar to this case. The cases that I found, again, involved different circumstances, significant amounts of money, just a large number of victims. Can you cite to me any cases that are similar so that I'm familiar with them? Yeah. And, Your Honor, I did a lot of research, too. I wouldn't say it was exhaustive, and I cannot find a very close analog to this case. Okay. So in this case, we're dealing with a few people involved, 25,000. The closest case was, I found one, I think it was $100,000. But in that case, there were multiple victims. Why do you think, in this case, it was proper to apply the leader organizer enhancement? So, of course, the review at this stage is whether the district court clearly erred in applying that enhancement, which is, was that decision illogical, implausible, or unsupported by inferences in the record? Can I just break it down into two pieces? The district court, as I understand it, made a finding that there were not five or more participants, or at least declined to rely on that. So the only question is whether it's otherwise extensive. Is that correct? I agree with that. So my question on this issue is whether or not the court applied the right test. So I want to ask you, do you agree that courts can't apply a but-for test? I do. Okay. So isn't that exactly what the district court did here when it said that this could not have happened without TAT? That's at the ER-45. I mean, that's really the ultimate decision, and it sounds very much to me like a but-for test, which our court has rejected. I understand that the district court certainly made that comment. I don't think that was the extent of its decision, and I think that particularly in clear error review, this court has to look to the entirety of the record to determine whether there were inferences from that record that could be drawn in the favor of the district court's finding. And what I would point to is not just that she was a linchpin or but-for cause of this offense, but that she was the person who was exercising some measure of control. She did that in many ways. She did that before this offense began when she was talking to, or I would actually characterize it as part of the conspiracy, but when she was talking to Fang, her customer, she told her when to show up. She told her how this would work. But counsel, if your argument that the court properly applied the leader organizer is that she had some control, isn't that a stretch? Well, that's exactly what this court has required under the Doe case, that the defendant exercised, quote, some control over others or was responsible for organizing others for the purpose of carrying out the crime. And I do want to split this into, I think I'm getting two questions here. One is, was she a leader organizer? And the other is, was this otherwise extensive? Those are both difficult questions for the government, I admit, but I think that the first question of whether she was a leader organizer is actually easier here because she told Fang when to show up. She had this occur in the bank's private conference room to which she had personal access. She walked into that conference room and said, give me the name, I will write it down for you. She told everyone in that room, don't trust the bank, just trust me. And she kind of got the deal done. But it's still, you're right, it's a separate requirement, essentially scale, and we don't have the five or more participants, so it has to be otherwise extensive. Do you have any case that says that a single transaction can be considered otherwise extensive? It seems an oxymoron. So there is the Govan decision, which I think is what Judge Mendoza was referring to when you referenced that there was a case involving almost $100,000. That is a single casino robbery in which this court held that the event was otherwise extensive. I wouldn't characterize this, though, as my friend does, as a single transaction. It's a conspiracy charge that actually encompasses a substantial period of time before the money laundering, during, and after. So what happens before is this defendant is talking to her client to arrange that side of the transaction, while she's also obviously, and we can infer from the record, talking to Tan's wife, Zhao, telling her that I have a client with $100,000 just sitting in an account because that is what Tan then relays to Yip. That all occurs over the period of multiple meetings. There is at least two meetings between Tan and Yip before the transaction takes place, and then after the initial money laundering, there is a second laundering of the same funds, and the defendant is the person who really oversees that second laundering. And I wouldn't characterize this as just for participants, even though it is only for culpable criminal participants. There are multiple bank tellers who the defendant commandeers to get this done, both during the first transaction and during the second. But you started by agreeing that the district court did not rely on five or more, and so that's kind of off the table, and we're just with otherwise extensive. But that inquiry as to how many unwitting participants were involved is part of the otherwise extensive analysis under this court's decisions. Just a question, and just a clarification. Did the probation officer in this case recommend leader-organizer enhancement? Yes, at the resentencing. No, at the initial sentencing. And the only reason the probation officer changed its position was because the court had already applied that enhancement. So it wasn't really an independent, but because the court applied it, they recommended it. Right, and I think that actually leads to a procedural defense that I think the court should resolve in our favor, too, which is that under this NAGRA, RODMA line of cases, once the district court has made a decision about a sentencing enhancement, and an appeal has been filed, and this court has decided a case— and there was an attack of the plea agreement in the first instance, which is very different here, where the remand from this court was for a resentencing on an open record. This court wouldn't have even reached the issues relating to the enhancements on the first appeal because it was sent back on an underlying—on one of the fraud charges. So I really don't understand how NAGRA is on—that you can say that that case applies. I mean, it's completely different. May I respond to that, Your Honor? Yes. So NAGRA sets forth the rule that when a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need not consider the issue. And our position is not at all that the district court couldn't have considered or reconsidered the leader-organizer enhancement. Our position is that this court, hearing the same case with the same facts and the same law relevant to that same enhancement, under NAGRA and RODMA, need not consider that issue. And there's a good reason for that, which is that the defendant is expected to raise claims, particularly ones she recognized and litigated in—before the first appeal, in that first appeal. So I do see my time is up, Your Honor. All right. Thank you, counsel. The case just argued will be submitted, and the court— And, Judge Collins, I don't know if— I think she has rebuttal. Oh, I'm sorry. That's right. I don't think I've ever made that mistake before. All right. Thank you, Your Honor. Three and a half minutes for rebuttal. Thank you so much, Your Honor. Let me first address the Rule 32 issues. So the objections were absolutely to the PSR, and I would like to give the court the citation. So—and the PSR is independently paginated, so PSR 57, the PSR states that Ms. Tatt has a mental health condition, and per her treating physician—or therapist, rather—that if she were incarcerated, she would have a mental breakdown. So that is a fact that was reflected in the PSR. Likewise, at PSR 36, Tatt's offense conduct, quote, was an isolated incident. So I think under—so under the Petri decision that the government just relied upon, the test is whether the party, in this case the government, quote, sufficiently controverted the facts contained in the PSR. I think there can be no question that when the government makes these arguments, they're sufficiently controverting those facts as reflected in the PSR. It's not outcome determinative whether the government belatedly files objections and does not title them as such. Defense counsel certainly recognized that these were factual objections to the PSR and brought that issue squarely before the district court for resolution. And the district court then failed to make a finding or state that it would not affect the outcome of the proceedings. That should be sufficient. As to the leader-organizer enhancement, I would take issue with the government's characterization of the record. Well, can you distinguish the case that your opposing counsel cited about the casino bank robbery, saying that you can have a single transaction that can be considered otherwise extensive? What's your response to that? Absolutely, Your Honor. I think I do have the exact quote from Govan, which is that the scheme was clearly extensive because it, quote, involved interstate travel, a large number of victims, and nearly $100,000 in robbery proceeds. We don't have a large number of victims here. We have one. We don't have interstate travel here. We have an isolated and highly limited transaction at a single location. We don't have $100,000. We have $25,000. None of the factors that the court relied upon in that case to find that the scheme was, quote, otherwise extensive are present here, not one. As to whether this scheme was otherwise extensive for the other reasons that Mr. Alden relied upon, we dispute his characterization of the record there, and we dispute the government's characterization overall at the many points that we put forward in our brief. But just to be clear, the government at trial relied on a willful blindness theory. And Tan and Yip, yes, had meetings before this one deal took place, but it was not clear who had told Ms. Tatt what. And, in fact, after the deal there was a conversation between Tan and Yip where Yip said, Ms. Tatt clearly didn't know what was going on and we're not going to use her again. So for the government then to rely on whatever this course of conduct was that took place prior to the transaction, it's not in the record what that course of conduct was. Presumably, Ms. Tatt spoke to Ms. Phan. She brought Ms. Phan to the transaction. But Ms. Phan is not a criminally responsible participant. And the test is whether the defendant exercised organizational control over another criminally responsible participant. So that is not Phan. That would be Tan. That would be Thao. It would not be any of the unwitting bank tellers who had no idea that there was criminal activity afoot. So the requisite control is not present. Thank you, Your Honor. All right. Thank you, Counselor Tavis. Now the case will be submitted. And I thank both counsel for the very helpful arguments in this case. The court will stand in recess for five minutes. All rise. This court stands in recess for five minutes.
judges: COLLINS, MENDOZA, DESAI